# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No. 19-23010-CMB |
| Nicki M. Todaro, <br>                     Debtor/Plaintiff, <br> vs. | Chapter No. 13 <br><br> Adversary No. 20-02035-CMB |
| Wells Fargo Bank, N.A., <br>                     Defendant. | Related to Document Nos. 24, 25 |
| Wells Fargo Bank, N.A., <br>                     Third Party Plaintiff, <br> vs. <br> PNC Bank, N.A., <br>                     Third Party Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION OF MOTION OF THIRD PARTY DEFENDANT, PNC BANK NATIONAL ASSOCIATION TO DISMISS THIRD PARTY PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)**

AND NOW, comes the Defendant/Third Party Plaintiff, Wells Fargo Bank, N.A., by and through its counsel, Bradley A. King, Esquire, and King Legal Group, LLC, and sets forth the within Memorandum of Law in Opposition of Motion of Third Party Defendant, PNC Bank National Association, to Dismiss Third Party Plaintiff's Complaint under Rule 12(b)(6), more particularly as follows:

    **I.**    **STANDARD AND SCOPE OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Federal Rule of Civil Procedure 8(a)(3) and 8(d)(2) also permit pleading allegations and for relief in the alternative. F.R.Civ.P. 8(d)(2) states that "a party may set out 2 or more statements of a claim or defense alternatively or

hypothetically, either in a single count or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

A complaint may only be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed2d 929 (2007). "It is well-established that a court should not dismiss a complaint pursuant to F.R.Civ.P. 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" In re Price, 1994 WL 142373 (Bankr.E.D.Pa. 1994) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Our obligation in deciding such a motion is 'to give the complaint a highly deferential reading, accepting the well-pleaded facts therein as true and drawing all reasonable inferences in the plaintiff's favor.'" Id. (citing Feinstein v. Resolution Trust Corp., 942 F.2d 34, 37 (1st Cir. 1991)). In considering a motion to dismiss under Rule 12(b)(6), the court will "take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989). The Court's standard of review on the motion to dismiss is whether, "taking the allegations of the complaint as true, and liberally giving the plaintiff the benefit of all inferences that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts upon which relief could be granted." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 175 (3d Cir. 1988) (citing Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985)). Moreover, in deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See,* Pension Benefit Guar. Corp v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." PepsiCo, 836 F.2d at 179 (citing Conley, 355 U.S. at 47-48). A well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely'. Twombly, 550 U.S. at 556 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

F.R.Civ.P. 9(b) specifically notes that, when alleging claims for fraud or mistake, allegations of "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See F.R.Civ.P. 9(b).

## II.  ARGUMENT

PNC correctly notes in its Memorandum of Law that the court must "take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." In addition, the Rules clearly dictate that, when alleging fraud or mistake, averments of malice, intent,

3

knowledge, and other conditions of a person's mind may be alleged generally. See F.R.Civ.P. 9(b). Under such a standard and reading of the complaint, it is clear that PNC's Motion to Dismiss lacks any basis and should be denied.

Wells Fargo clearly sets forth in the Third Party Complaint that the intent of the loan was to "refinance, payoff, and satisfy the PNC line of credit and PNC Mortgage…" Doc. 11, Paragraph 5. The Third Party Complaint also avers that Wells Fargo provided the loan upon the conditions that the outstanding balance of the PNC line of credit would be paid in full, the PNC line of credit would be terminated, and the PNC Mortgage would be satisfied of record immediately after payoff, so that Wells Fargo's Mortgage would have first lien position against the Property. Id., Paragraph 6. The Settlement Statement for the closing on the Wells Fargo loan, which is attached to the Third Party Complaint as Exhibit A, shows that the PNC line of credit and PNC Mortgage were paid off from the loan proceeds provided by Wells Fargo. Id., Paragraph 8 and Exhibit A. In fact, the Third Party Complaint specifically avers that PNC's predecessor in interest represented to Wells Fargo that the PNC line of credit would be terminated and the PNC Mortgage would be satisfied, which both PNC and PNC's predecessor in interest intentionally and/or recklessly failed to do, allowing the Debtor to draw additional funds from the line of credit. Id., Paragraphs 10, 12, 13, 15.

Contrary to PNC's argument, even if Wells Fargo would decide to raise a breach of contract claim, the Rules of Civil Procedure would allow such a claim to be raised in the alternative to quasi-contract or tort claims. Moreover, there is no written and executed contract specifically between Wells Fargo and PNC involving the Wells Fargo payoff and termination of the line of credit or satisfaction of the PNC Mortgage, only promises and representations made by PNC Bank, which form the basis of quasi-contract and tort claims.

4

Wells Fargo contends that the Third Party Complaint is not untimely based upon the discovery rule, which serves to toll the commencement of the statute of limitations for claims. Such statutes of limitations applicable to the claims raised in this case would have tolled so that the claims have been raised within the applicable statute of limitations.

A. **Equitable Subrogation**

Wells Fargo has sufficiently pled and raised a claim for equitable subrogation. PNC, in its Memorandum of Law, appears to attempt to litigate and argue the merits of the claim and a clear issue of fact regarding equitability under the doctrine before any discovery has occurred. All facts pled in the Third Party Complaint must be accepted as true in deciding PNC's Motion, so the issue is whether a claim under the doctrine of equitable subrogation has been appropriately pled and with sufficient basis. Wells Fargo has clearly done so in its Third Party Complaint with respect to equitable subrogation. PNC's argument of the factual merits of the equitability of Wells Fargo's claim is not proper at this stage of the case nor is that argument accurate or sufficient to support dismissal at this point.

Even if the Court engages in the factual analysis as to the merits of the equitable subrogation claim, as PNC attempts to do, Wells Fargo not only has pled and maintains sufficient grounds for such a claim, but should be successful on the merits of such a claim. Initially, it is important to note that PNC's Memorandum of Law misinterprets the law on the doctrine of equitable subrogation. Contrary to what PNC suggests, no brightline rule exists that prevents a mortgagee from obtaining equitable subrogation as to the lien position of the prior mortgage-holder when the prior mortgage-holder fails to satisfy its mortgage after payoff or even in cases where the party seeking subrogation committed an error or mistake with respect to its mortgage.

Equitable subrogation allows a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance. Infante v. Bank of America, N.A.,

5

130 A.3d 773 (Pa.Super. 2015). Pennsylvania has recognized the doctrine of equitable subrogation, which requires four criteria to be met for the doctrine to apply. These four requirements are: (1) the claimant paid the creditor to protect his own interests; (2) the claimant did not act as a volunteer; (3) the claimant was not primarily liable for the debt; and (4) allowing subrogation will not cause injustice to the rights of others. Id. "Courts are inclined to favor and further the doctrine of subrogation or, as it is sometimes called, substitution…" Home Owners' Loan Corp. v. Crouse, 30 A.2d 330, 331 (Pa.1943).

With respect to the second prong of the test, the Superior Court has noted that "one who is under no legal obligation or liability to pay a debt and who has no interest in, or relation to, the property is a stranger or volunteer with reference to the subject of subrogation." Id. However, in analyzing the meaning of the aforementioned statement on the second prong, the courts have explained that even "where money has been loaned upon an allegedly defective mortgage for the purpose of discharging a prior valid encumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening encumbrances." Infante, 130 A.3d at 778 (citing Haverford Loan & Bldg. Ass'n of Philadelphia v. Dougherty, 37 A. 179 (1897) and Gladowski v. Felczak, 31 A.2d 718 (1943) (holding that equitable subrogation and equitable lien against the borrowers' property was proper despite the lender's mortgage being deemed invalid). "Where property of one person is used in discharging an obligation owed by another or a lien on property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefits thus conferred, the former is entitled to be 'subrogated' to the position of the oblige or lienholder." Gladowski, 31 A.2d at 663.

A mortgagee who has lent money to a borrower for the purpose of discharging a prior mortgage may be subrogated to the rights of the prior mortgage-holder and the lien position of the

6

prior mortgage holder for the amount of the money paid and will not be considered a volunteer or stranger under the second prong of the test. Infante v. Bank of America, N.A., 130 A.3d 773 (Pa.Super. 2015). In the Infante case, the husband-borrower had executed a mortgage, pledging property owned by the husband and wife as tenants by the entireties, without his wife's knowledge, and used the loan proceeds to pay off a prior mortgage encumbering the entireties property. His wife did not execute the mortgage. The Pennsylvania Superior Court ruled that the lender was entitled to equitable subrogation to the rights of the prior mortgage-holder and an equitable lien against the property in an amount equal to the amount of the loan proceeds used to pay off the prior mortgage encumbering the property, because the lender did not act as a "volunteer" under the second prong when paying off the prior mortgage because the wife would be unjustly enriched if she were permitted to retain the property without bearing responsibility for the mortgage. Infante v. Bank of America, N.A., 130 A.3d 773 (Pa.Super. 2015). As a result, the lender satisfied the second prong of the test and was entitled to equitable subrogation.

In arriving at its ruling, the Infante court specifically cited the Pennsylvania Supreme Court's decision in Haverford for support of its ruling and analysis of the second prong of the test. The Supreme Court stated:

> "In the present case the appellant was not a volunteer, but paid the first mortgage on the express direction of the debtor, and with the intention of both parties that the appellant should be secured by the land. A person who has lent money to a debtor for the purpose of discharging a debt may be subrogated by the debtor to the creditor's rights; and if the party who has agreed to advance the money for the purpose employs it himself in paying the debt and discharging the incumbrance on land given for its security, he is not to be regarded as a volunteer. He is not, after such agreement with the debtor, a stranger in relation to the debt, but may, in equity, be entitled to the benefit of the security which he has satisfied with the expectation of receiving a new mortgage or lien upon the land for the money paid. When the holder of a junior mortgage discharges the lien of a senior incumbrance upon the property, he thereby becomes entitled to all the benefits of the security represented by the lien so discharged. When on the foreclosure of a second mortgage it appears that the loan by the second mortgagee was made on an agreement with the mortgagor that it should be applied to extinguish the first mortgage, and that part

7

of the loan was actually so applied, the second mortgagee is entitled to a decree subrogating him to the rights of the first mortgagee on payment of the balance due on the mortgage. Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer whom he has thus satisfied, there being no intervening incumbrances."

Id. (citing Haverford, 37 A. at 181).

Similarly, in the Townsend case, the court held that "An equitable lien arises from a contract indicating an intent to make certain property security for an obligation or from a situation which otherwise would result in an unjust enrichment." M & T Mortg. Corp. v. Townsend, 2013 WL 11273051 (Pa.Super. 2013). In the Townsend case, the court granted an equitable lien in favor of a lender who held a signed mortgage that was inadvertently not recorded. The court held that the borrowers would be unjustly enriched if the equitable lien was not applied to the property because the borrowers had used the loan proceeds to satisfy a prior mortgage encumbering the property. Id.

As the above-referenced case law repeatedly attests, Pennsylvania case law is clear on the purpose and application of equitable subrogation in a mortgage refinance and payoff scenario, like the present case. There is a plethora of Pennsylvania Superior Court and Supreme Court case law, some of which is readily cited by PNC, which applies the doctrine to allow a lender's mortgage to assume the priority of a prior mortgage when the loan was used to payoff the prior mortgage, even when there are errors in the mortgage. The Infante case cited hereinabove is most on point with Pennsylvania courts' liberal application of the doctrine of equitable subrogation.

The cases cited by PNC to the contrary are the exception to the general rule of applying the doctrine in a payoff of a prior mortgage and subrogation to the rights of the same. In analyzing the rulings in the Heller and Carr cases, the Infante court explains that the Heller and Carr cases, which are cited and relied upon by PNC, represent a narrow exception to the general rule that

8

equitable subrogation is regularly applied in refinance scenarios. Infante analyzed and distinguished Heller and Carr due to the extenuating circumstances presented and based upon the specific relief requested in those cases. The courts in the Carr and Heller cases, cited by PNC, do not apply the doctrine due to a title examination that overlooked an intervening lien against the property. The lender failed to locate and pay off the properly recorded intervening lien, but then attempted to use equitable subrogation to hurdle the intervening lien in the order of lien priority based upon the payoff of a lien senior to the intervening lienholder. The Carr court held that it would not grant equitable subrogation when "it was [the lender's] own carelessness that brought about the pecuniary loss it is now facing" due to the lender's own error in its title search to locate the intervening mortgage and payoff the same. Carr, 954 A.2d 1, 5 (Pa.Super. 2008). Similarly, the Heller court denied equitable subrogation, because the mortgagee's "problem…was the result of its own negligence in failing to discover the third mortgage, to which [the lender's] mortgage could only be secondary." The Heller court would not permit the mortgagee to be equitably subrogated to the lien position of the superior mortgage holders, which the loan paid off, at the expense of an innocent mortgage holder that the mortgagee failed to locate and payoff as well. First Commonwealth Bank v. Heller, 863 A.2d 1153, 1155-1156 (Pa.Super. 2004). The Infante court explained that the lenders in Heller and Carr did not satisfy the second prong of the test, as a result of the lender's failure to locate and satisfy an innocent, intervening lienholder so the lender could not be subrogated to a lien position superior to the intervening lienholder.

In addition, PNC misstates the holding of In re Stambaugh. In its Memorandum of Law, PNC states that the Stambaugh court "refused to invoke the equitable subrogation doctrine where it was within the control of the subsequent lender to ensure that the previous mortgage which it had paid off was satisfied." Doc. 25, p. 8. With this statement, PNC seems to be implying that the Stambaugh case sets forth the rule that no lender may obtain equitable subrogation if it pays

9

off a prior mortgage and fails to ensure that the prior mortgage is satisfied or that Wells Fargo had some control over ensuring that PNC's Mortgage was satisfied after payoff. However, there is an obvious distinction between the Stambaugh case and this case. The Stambaugh court's refusal to grant equitable subrogation was based solely and exclusively upon the fact that the mortgagee seeking equitable subrogation held both the mortgage at issue in the case and the prior mortgage that was paid off by the loan/mortgage at issue and should have been satisfied. In re Stambaugh, 532 B.R. 572, 576 (Bankr.M.D.Pa. 2015). The Stambaugh court refused to grant equitable subrogation solely because the party seeking subrogation was the same party that held the prior mortgage and forgot to satisfy it. Id. The Stambaugh case is completely irrelevant to this case, because Wells Fargo does not hold both the Mortgage at issue and the PNC Mortgage and, therefore, Wells Fargo had no control over satisfaction of the PNC Mortgage at any point.

  The Heller and Carr cases are also completely inapposite to the case at hand, which the Infante court notes in distinguishing those cases from Infante. Contrary to the argument of PNC, Wells Fargo's position is not "less equitable" than the lenders in Carr and Heller. Wells Fargo is not attempting to hurdle an innocent intervening lienholder with the equitable subrogation claim. Wells Fargo did everything necessary to establish a first mortgage lien position against the Property by requesting a payoff, relying upon representations of PNC's predecessor in interest that the PNC Mortgage would be satisfied after payoff, and then paying off the PNC Mortgage in full. Unlike the lender in Stambaugh which held both mortgages, Wells Fargo has no preemptive control over PNC or its predecessor in interest to require the PNC Mortgage to be satisfied before disbursing its loan to pay off the PNC Mortgage. Wells Fargo had no control over the satisfaction of PNC's Mortgage. Wells Fargo is totally reliant upon the assurances of the prior mortgage holder that it will satisfy the mortgage of record after payoff. Wells Fargo specifically outlined this scenario in the Third Party Complaint in alleging that PNC's predecessor represented that the PNC

Mortgage would be satisfied after payoff and Wells Fargo justifiably relied on the same. Doc. 11, Paragraphs 21-28. As such, Wells Fargo's allegations are sufficient to put PNC on notice of the claim raised and the basis for such claim.

Furthermore, Wells Fargo has a more equitable argument than even the lender in <u>Infante</u>, which obtained equitable subrogation and was not considered a "volunteer" under the second prong of the test. The <u>Infante</u> lender erred in requiring only the husband to execute the Mortgage, causing the mortgage to be defective. Wells Fargo committed no error in this situation. The aforementioned case law reveals that the courts commonly permit the application of equitable subrogation even in cases where the lender committed an error in drafting and/or execution of the Mortgage, causing the mortgage to be defective, contrary to what PNC suggests. It is even more equitable to allow Wells Fargo to apply the doctrine in this case than in the defective mortgage cases, because Wells Fargo committed no error or oversight in the creation and execution of its Mortgage. Only intentional actions and/or errors of third parties who would receive the windfall of Wells Fargo's loan, namely PNC and the Debtor, caused the injury and damages that Wells Fargo suffered here. Not only has Wells Fargo pled all of the facts in support of this doctrine, including the representations made by PNC's predecessor in interest regarding satisfaction of the Mortgage and the payoff of the same, but there is nothing that could be deemed "innocent" about the actions of PNC and its predecessor in interest in accepting a full payoff and failing to satisfy the PNC Mortgage, unlike the innocent intervening lienholders in <u>Carr</u> and <u>Heller</u>, as Wells Fargo has clearly pled in the Complaint. See Doc. 11, Paragraphs 21-28. As a result, Wells Fargo has sufficiently pled and established a cause of action for equitable subrogation.

**B. <u>Unjust Enrichment</u>**

Although PNC claims that Wells Fargo cannot sustain an unjust enrichment claim, PNC again attempts to argue an issue of fact and the merits of the same to support its argument in favor

of dismissal. PNC's sole argument on this claim focuses on whether or not PNC's enrichment is "unjust." PNC's citations in support of this argument note that "…in absence of misleading by a third party there is no right to restitution against the third party to remedy the contracting party's breach, although the third party is enriched, enrichment is not deemed unjust" and the plaintiff "must allege in its complaint facts showing that the defendants specifically requested benefits or misled [the plaintiff]". See Styer v. Hugo, 619 A.2d 347, 350 (1993) and Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 7 A.3d 278, 284 (2010).

      Contrary to PNC's contentions, Wells Fargo expressly outlines in its Third Party Complaint that PNC and/or PNC's predecessor in interest misrepresented to Wells Fargo that it would satisfy the PNC Mortgage of record after receiving the payoff from Wells Fargo, which induced Wells Fargo to rely on that misrepresentation and make the payoff. Doc. 11, Paragraphs 10, 12, 13, 15. These allegations clearly set forth a benefit conferred upon PNC and/or its predecessor in interest by Wells Fargo. PNC benefitted from the payoff of the balance on the line of credit, including accrued interest, and it would be inequitable for PNC to retain the PNC Mortgage as a first lien against the Property when the payoff was conditioned upon the satisfaction of the PNC Mortgage. Doc. 11, Paragraphs 30-32. In addition, Wells Fargo has alleged that PNC or its predecessor in interest misrepresented to Wells Fargo that the PNC Mortgage would be satisfied immediately following payoff, which would also make it inequitable for PNC to retain the PNC Mortgage as a first lien against the Property. Doc. 11, Paragraphs 41-42. As the court must accept these well-pled facts as true in considering the Motion to Dismiss, Wells Fargo has properly pled that PNC or its predecessor in interest were not only enriched by the payoff, but they were unjustly enriched as a result of the misrepresentations with respect to satisfying the PNC Mortgage inducing Wells Fargo to payoff the line of credit.

### C. Fraud/Bad Faith

PNC contends that the cases it cites set forth the rule that a promise to do something in the future cannot be fraud. However, PNC misconstrues the holdings in those cases to this Court to support its baseless argument on this issue. First, PNC cites only <u>Ira G. Steffy & Son, Inc.</u> for that proposition. In the <u>Steffy</u> case, the court sustained a preliminary objection with respect to fraud solely based on the fact that the scienter element of fraud was not alleged, because the appellant only alleged that the appellee represented that money would be available in the future, and then failed to perform. The court noted that the appellant never alleged that the appellee "knowingly misrepresented that the money would be available in order to induce appellant's reliance" which would have been sufficient to raise the fraud claim. <u>Ira G. Steffy & Son, Inc.</u>, 7 A.3d at 290. In the present case, the Plaintiff in the Third Party Complaint explicitly alleges that:

> "Wells Fargo justifiably relied upon the representation made to Wells Fargo by PNC's predecessor in interest that PNC's predecessor in interest would terminate the line of credit after payoff of the same using the loan proceeds received from Wells Fargo and that the PNC Mortgage would be satisfied of record…these representations of PNC's predecessor in interest were fraudulent misrepresentations of its intentions following the payoff…these fraudulent misrepresentations were calculated to induce Wells Fargo to provide the loans proceeds to payoff the line of credit…PNC's predecessor in interest defrauded Wells Fargo by intentionally misrepresenting to Wells Fargo that it would terminate the line of credit after payoff…and the PNC Mortgage would be satisfied."

Doc. 11, Paragraphs 39-42.

A simple reading of the Third Party Complaint shows that the required allegation for the scienter element for fraud cannot be more clear and direct, which the Court must accept as true in deciding PNC's Motion to Dismiss. The allegations in the Third Party Complaint on scienter go far beyond the allegations analyzed by the court in <u>Steffy</u>, because Wells Fargo specifically alleges the intent to induce a payoff from Wells Fargo with the misrepresentation regarding satisfaction

13

of the PNC Mortgage and justifiable reliance on the same, which the Steffy court indicates would be sufficient to maintain the fraud claim.

In addition, it is important to note that F.R.Civ.P. 9(b) dictates that, when pleading fraud or mistake, allegations of "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." See F.R.Civ.P. 9(b). Wells Fargo is not required to specifically allege the scienter element under the Rules of Civil Procedure. Therefore, Wells Fargo has sufficiently pled the scienter element of fraud to maintain this claim.

Moreover, in alleging that Wells Fargo does not identify any representations that were false, PNC basically misrepresents Wells Fargo's allegations to this Court. A basic reading of the Complaint reveals that Wells Fargo explicitly alleged that the misrepresentations involved statements regarding termination of the line of credit and satisfaction of the PNC Mortgage. As a result, Wells Fargo sufficiently stated and pled a claim for fraud in the Third Party Complaint, including appropriate allegations for the scienter element of fraud.

### D. Mistake

Under Count IV of the Third Party Complaint, PNC's argument is again based upon a loose and tortured reading of the Third Party Complaint. PNC alleges that the allegations are contradictory with respect to a unilateral mistake versus a mutual mistake and PNC cannot understand whether Wells Fargo alleges one or the other. Paragraphs 48, 49, and 50 of the Third Party Complaint each include the language "in the alternative" which obviously means that Wells Fargo is alleging unilateral mistake and mutual mistake in the alternative to each other depending on what discovery reveals regarding the parties' knowledge on the issue. In fact, Paragraph 50 specifically explains the alternative allegation of the two doctrines.

Although PNC takes issue with this alternative pleading method, the Rules of Civil Procedure belie PNC's argument by expressly authorizing the alternative pleading of claims. The

Federal Rules of Civil Procedure condone this in F.R.Civ.P. 8(d)(2), which states that "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

PNC correctly notes in its citations of the case law that the courts readily recognize that mutual mistake or unilateral mistake can warrant reformation or rescission of a contract. However, PNC is incorrect in its contentions regarding those doctrines and whether they are properly pled here. First, a contract does exist which is subject to reformation or rescission, being the PNC Mortgage encumbering the Property. As noted hereinabove in the previous section, Wells Fargo has clearly set forth claims for fraud and bad faith that would warrant rescission of the PNC Mortgage. Wells Fargo has also properly incorporated by reference the factual allegations in Count III-Fraud/Bad Faith of the Third Party Complaint into County IV seeking satisfaction of the PNC Mortgage. Doc. 11, Paragraph 46.

Second, Wells Fargo clearly alleged that, in the alternative, even if PNC or its predecessor in interest did not have the appropriate scienter for fraud/bad faith, PNC would have been mistaken as to its predecessor in interest's failure to satisfy the PNC Mortgage and terminate the line of credit. Id. at Paragraph 49- 50. Third, PNC seems to contend that Wells Fargo could somehow have ensured that the line of credit was closed and the PNC Mortgage satisfied before granting the loan. However, customary practice in the lending industry for refinance, payoff and satisfaction of prior mortgages dictates that a line of credit and a mortgage will never be terminated or satisfied until the later loan is granted to the borrower and the line of credit and mortgage are paid off. Every lender involved in a refinance must rely upon the representation of the prior lienholder that it will satisfy the mortgage after payoff unless the lender holds both the prior mortgage and the current mortgage. After payoff, Wells Fargo has no control over PNC's actions in terminating

the line of credit and satisfying the PNC Mortgage. Fourth, PNC contends that reformation based on mistake is not available to Wells Fargo, because PNC allowed Todaro to continue to draw on the line of credit and the parties cannot be placed back in their previous position. However, PNC fails to concede that this element is only relevant to an alleged mutual mistake, but this is not a factor to be considered in a unilateral mistake scenario, which Wells Fargo properly alleged as well. Therefore, the status quo argument is unavailing to save PNC from a unilateral mistake claim. In addition, F.R.Civ.P. 8(d)(2) explicitly instructs the courts that "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Therefore, Wells Fargo has properly alleged both unilateral mistake and mutual mistake in the alternative, as permitted and required by the Rules of Civil Procedure, and neither claim should be dismissed.

### E.  Quiet Title

PNC's argument with respect to the dismissal of the quiet title count of the Third Party Complaint is not supported by the case law and Wells Fargo properly pled the claim in accordance with the Rules of Civil Procedure. PNC cites Pa.R.C.P. 1061 to support its contention that a quiet title claim is merely a remedy and not an alternative theory of recovery, but that rule says no such thing. PNC quotes the Siskos case for this premise, but the quoted citation, which lacks any context, from the Siskos case is completely misconstrued. That small quotation referenced by PNC is taken entirely out of context. The Siskos case and the quotation cited by PNC does not support the theory that a quiet title action is not a separate claim to be raised in a Complaint. The quotation cited is set forth in the midst of the court's analysis of the promulgation of the new Rule 1061 and its effect on the pre-existing rules regarding actions in ejectment and actions to quiet title, being 12 P.S. § 1543 and § 1545. The Siskos court was simply explaining that Rule 1061 actually replaced § 1543 and § 1545, rather than § 1543 and § 1545 remaining in effect and Rule 1061 adding to and supplementing those rules. The court's analysis does not imply that quiet title

16

actions under Rule 1061 are not separate actions from other types of claims, such as those raised by Wells Fargo in the Third Party Complaint. See Siskos v. Britz, 790 A.2d 1000, 1006-1007 (2002).

Moreover, the fact that a specific set of rules, identifying a quiet title action as a unique and separate cause of action, has been promulgated in the Rules of Civil Procedure proves that this is a separate and distinct type of claim and right to relief that may be raised separate from other causes of action. The plain language of Rule 1061 and the remainder of the following Rules of Civil Procedure pertaining to quiet title actions expressly identifies quiet title actions as a separate cause of action and outlines the manner in which the separate count for the same should be pled, with which Wells Fargo has complied. See Pa.R.C.P. 1061-1068; see also Doc. 11, Paragraphs 51-57. Rule 1061 permitting a quiet title action expressly allows the action to be brought to "compel an adverse party to…satisfy of record…any document, obligation or deed affecting any right, lien, title or interest in land…" Wells Fargo has specifically raised the quiet title action to seek satisfaction of the PNC Mortgage and has alleged throughout the Third Party Complaint and Count V why the same is warranted and necessary. Therefore, PNC's argument on this issue has no merit.

**F. Statute of Limitations**

Although PNC attempts to seek dismissal of all claims in the Third Party Complaint based upon the expiration of the statute of limitations for each claim, PNC's argument assumes that the statute of limitations for each claim began running on the day the PNC line of credit was paid off. However, this argument ignores the well-established "discovery rule" with respect to the start of the running of any statute of limitations.

"The general rule is that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. In certain cases involving a latent injury, and/or instances in which the causal connection between the injury and another's conduct is not apparent, the

discovery rule may operate to toll the statute of limitations until the plaintiff discovers that the plaintiff has been injured and that her injury has been caused by another's conduct." Wilson v. El-Daief, 964 A.2d 354, 362 (2009) (citing Fine v. Checcio, 870 A.2d 850 (2005)). In addition, "the determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide." Id. at 363.

At least until this Bankruptcy case was filed on July 30, 2019, Wells Fargo was unaware that the line of credit had not been terminated, the PNC Mortgage had not been satisfied, the Debtor had continued to draw additional funds from the line of credit after payoff, and that the Debtor would attempt to file an adversary action to attempt to obtain a ruling that Wells Fargo's claim is unsecured. Wells Fargo would have no way of knowing the line of credit was not terminated and that the Debtor drew additional funds on the line of credit after payoff until those issues were revealed to Wells Fargo through the Bankruptcy. No damages or injury to Wells Fargo could occur if the line of credit was terminated at the time of payoff of the same or if the Debtor upheld her promise not to draw additional funds from the line of credit after payoff. The trigger for potential damages or injury to Wells Fargo and, in turn, the running of the statute of limitations would be the Debtor's withdrawal of additional funds from the line of credit and/or failure to make repayment of the same, as required under the line of credit agreement, after payoff of the same from the Wells Fargo loan. Wells Fargo would not have been aware of those bases for damages and the causation for the damages resulting from those facts until 2019. Therefore, the discovery rule would toll the statute of limitations for each claim and places the raising of these claims squarely within the necessary time periods for the statutes of limitations. Moreover, as the Wilson case establishes, the issues of the plaintiff's awareness of the injury, causation, and the tolling of a statute of limitations are fact intensive issues that are questions that should be decided at trial, not at the pleadings stage of the case under a Motion to Dismiss.

### III.  CONCLUSION

In light of the foregoing, Wells Fargo respectfully requests that this Honorable Court enter an order denying the Motion to Dismiss the Third Party Complaint or, in the alternative, Wells Fargo respectfully requests that this Honorable Court enter an order permitting Wells Fargo to amend the Third Party Complaint in any way the Court deems necessary.

Respectfully submitted,

KING LEGAL GROUP, LLC

By: /s/ Bradley A. King
    Bradley A. King, Esquire
    PA ID No. 307090
    114 North Maple Avenue
    Greensburg, PA 15601
    (724) 836-1500 (Telephone)
    (724) 836-1668 (Facsimile)
    bking@kinglg.com
    Attorney for Defendant/Third Party
    Plaintiff, Wells Fargo Bank, N.A.

Date:  July 23, 2020